UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-3830 JGB (DFM)** | Date | July 28, 2026 |
|---|---|---|---|

| Title | *Severo Gonzalez Reyes v. Jaime Rios, et al.* |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) GRANTING Petitioner's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 3) and (2) DIRECTING the Clerk of Court to Seal Docket Entry One (IN CHAMBERS)**

Before the Court is petitioner Severo Gonzalez Reyes's ex parte application for a temporary restraining order.  ("Application," Dkt. No. 3.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the matter, the Court **GRANTS** the Application.

## I.  BACKGROUND

On July 10, 2026, petitioner Severo Gonzalez Reyes ("Petitioner") filed a petition for writ of habeas corpus.  ("Petition," Dkt. No. 1.)  Petitioner raises three grounds for relief, all of which essentially challenge an immigration judge's finding that Petitioner is a flight risk during a bond hearing.  (Id.)

On the same date, Petitioner filed the instant Application.  (Application.)  The Court issued an order preserving its jurisdiction and ordering the Government to respond to the Application. (Dkt. No. 7.)  On July 15, 2026, the Government responded to the Application. ("Opposition," Dkt. No. 9.)  On July 20, 2026, Petitioner filed a reply to the Application, addressing the Government's arguments.  ("Reply," Dkt. No. 10.)

Petitioner is a native of Mexico who has resided in the United States since 1999. (Petition ¶¶ 2, 25.) Petitioner has no criminal history. (Id. ¶ 8.) Petitioner has four children, ages 21, 18, 13, and 7, all of whom are U.S. citizens. (Id. ¶ 26.) On May 3, 2026, Petitioner was preparing to leave for work when ICE detained him in Oxnard, California. (Application at 4.) Petitioner remains in custody at Desert View Facility in Adelanto, California. (Petition ¶ 3.)

Initially, Petitioner was not given a bond hearing and filed a petition for writ of habeas corpus requesting one. (Id. ¶ 5.) The petition was assigned to this Court, 5:26-cv-02440-JGB-DFM. The Court granted the petition, and his bond hearing was conducted on June 25, 2026. (Id. ¶¶ 5–6.) The immigration judge denied bond on the grounds that Petitioner was a flight risk. (Id. ¶ 7, Ex. 1.) To support this conclusion, the immigration judge considered Petitioner's immigration history: "He attempted to enter illegally on TWO occasions on January 8, 1998, but was caught on both occasions and voluntarily returned to Mexico. . . . He again entered illegally in early 1999 and was apprehended in Oxnard, California . . .[and he] voluntary[ily] return[ed] to Mexico. At some short point thereafter, he was finally able to successfully illegally enter and remain in the United States." (Id., Ex. 1 at 1.) The immigration judge concluded that Petitioner's "recidivist pattern . . . demonstrates a serious risk of flight." (Id.) The immigration judge also found that Petitioner has worked without authorization and acknowledged that he would continue to work if released, which also demonstrated that he was a flight risk "as he fails to respect the laws of this nation." (Id.)

The immigration judge further noted that Petitioner is "at the initial stage of his removal action" and qualifies "for cancellation of removal given his four citizen" children. (Id.) Finally, the immigration judge determined that even if granted bond, Petitioner's daughter, who would serve as a sponsor, does not make enough money and thus "would be unable to pay a substantial bond". (Id.)

## II.  LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S.

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk NPO

674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## III.  DISCUSSION

### A.  Waiver of Exhaustion is Warranted

As an initial matter, Respondents argue that the Court should decline to address Petitioner's claims because he has not exhausted administrative remedies by failing to appeal the immigration judge's bond determination to the BIA. (Opp'n at 4–6.)

On habeas review, exhaustion is a prudential rather than jurisdictional requirement. Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). Courts may require prudential exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; or (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Even if these factors weigh in favor of prudential exhaustion, waiver of exhaustion may be appropriate "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted).

The Court waives the exhaustion requirement in this matter. Petitioner would suffer irreparable harm if forced to wait for the BIA to render a decision on his appeal. Although the Court cannot say with certainty, Petitioner would likely have to wait at least six months in detention for the BIA to issue a decision on his appeal. "In 2024, the EOIR data showed an average processing time of 204 days for bond appeals." Rodriguez v. Bostock, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). And that number has likely only increased since 2024 given the BIA's increased workload and its inability to "keep up with incoming filings while tackling the backlog in any meaningful way." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). Relatedly, Petitioner was not afforded a bond hearing at the outset of his detention, requiring him to file a petition and seek relief from this Court. Thus, given the delays already experienced by Petitioner, the Court concludes it is inappropriate to further delay the review of Petitioner's claims and the irreparable injury he is facing.

**B.  Temporary Restraining Order**

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in their favor.  Winter, 555 U.S. at 20.  Likelihood of success on the merits "is a threshold inquiry and is the most important factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).  Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction.  Synopsys, Inc. v. AzurEngine Techs., Inc., 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019) ("Given this opportunity for briefing, the Court will instead construe [plaintiff's] request for a TRO as a motion for preliminary injunction.").

1.  **Likelihood of Success on the Merits**

"Likelihood of success on the merits is a threshold inquiry and is the most important factor."  Env't Prot. Info. Ctr., 968 F.3d at 989.  Petitioner contends the immigration judge abused its discretion by finding that Petitioner presents a flight risk by "clear and convincing" evidence. (Application 7–10.)  Petitioner argues the immigration judge's erroneous finding violates his substantive due process rights under the Fifth Amendment.  (Id.)  To determine whether the immigration judge abused its discretion, the Court reviewed the "Order of the Immigration Judge" attached as Exhibit 1 to the Petition.  As stated, the immigration judge primarily denied bond because of Petitioner's history of entering this country and working without authorization.  (See Petition, Ex. 1.)

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'"  Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  Accordingly, "[c]ivil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community."  Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (citing Zadvydas, 533 U.S. at 690). Thus, under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections under Section 1226(a).

Pursuant to 8 U.S.C. § 1226(e) ("Section 1226(e)"), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Thus, Section 1226(e) precludes a noncitizen from "challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release."  Jennings v. Rodriguez, 583 U.S. 281, 295 (2018) (plurality) (citation modified). However, with respect to bond determinations, federal courts retain jurisdiction to consider

constitutional claims, questions of law, or "mixed questions" requiring application of law to facts.  See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024).  Specifically, federal courts may review an immigration court's determination that a noncitizen presents a danger or is a flight risk.[1]  Id.  As recognized by the Ninth Circuit in Martinez, an immigration judge applies the same nine-factor test set forth in In re Guerra, 24 I. & N. Dec. 37 (BIA 2006) "[t]o determine whether an alien is a danger to the community *or a risk of flight*."  24 F.4th at 783 (emphasis added).  "Even though what constitutes 'dangerousness' [and flight risk] is malleable and involves agency discretion, Wilkinson instructs that this is still a legal standard so long as federal courts can 'assess whether an immigration judge correctly applied the statutory standard to a given set of facts.'"  Id. (quoting Wilkinson v. Garland, 601 U.S. 209, 221 (2024)).

An immigration judge's flight risk finding is reviewed under an "abuse of discretion" standard.  Id. at 784.  Pursuant to the deferential standard, the reviewing court determines whether the immigration judge "'applied the correct legal standard'" and may not "'reweigh evidence.'"  Id. at 785 (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).  An immigration judge "'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,'" Pleitez-Lopez v. Barr, 935 F.3d 716, 719 (9th Cir. 2019) (quoting Avagyan v. Holder, 646 F.3d 672, 678 (9th Cir. 2011)), or "'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'"  An Na Peng v. Holder, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting Ahmed v. Holder, 569 F.3d 1009, 1014 (9th Cir. 2009)).

The Court finds the immigration judge abused its discretion in finding Petitioner a flight risk.  To deem a noncitizen a flight risk, the immigration judge must find by clear and convincing evidence establishing "an abiding conviction that the truth of [the] factual contentions at issue is highly probable."  Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc).  This is "a high burden and must be demonstrated in fact, not 'in theory.'"  Obregon v. Sessions, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (quoting United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991)); see also Perez v. Wolf, 445 F. Supp. 3d 275, 287 (N.D. Cal. 2020) (collecting cases applying the "high standard" of "clear and convincing" evidence).  In conjunction with this evidentiary standard, an immigration judge may consider "any or all of the following:"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s

---

[1] Although Martinez involved a dangerousness determination, the same rationale applies to detention decisions based on flight risk.

history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

Martinez, 124 F.4th at 783 (citing Guerra, 24 I. & N. Dec. at 40).  In support of his bond application, Petitioner submitted the U.S. birth certificates for his children and the documents for the proposed sponsor, his daughter Rosa.  (Petition, Exs. 5–6.)  Petitioner also submitted ten letters of support from: (1) his children; (2) the property manager of his residence since 2013; (3) his children's teachers; (4) his neighbor; (5) his co-workers; and (6) the president and director of the daycare program his children have attended for almost 12 years.  (Id. Ex. 8.)

Here, the immigration judge found "by clear and convincing evidence, that [Petitioner] is flight risk" because of his "lengthy immigration history" and Petitioner's history of working "without authorization since entering the United States."  (Petition, Ex. 1 at 1.)  However, the Court finds that these reasons appear legally insufficient to establish a current flight risk that is unmanageable by release on bond.  The immigration judge recounted that Petitioner "attempted to enter illegally on TWO occasions on January 8, 1998, but was caught on both occasions and voluntarily returned to Mexico."  (Petition, Ex. 1 at 1.)  The immigration judge asked Petitioner why he tried to enter, to which he stated, "he wanted to enter the United States for work."  (Id.)  Petitioner entered illegally in 1999 and was apprehended in Oxnard, California.  (Id.)  He voluntarily returned to Mexico.  (Id.)  "At some short point thereafter, he was finally able to successfully illegally enter and remain in the United States."  (Id.)  Petitioner argues his unlawful entry 27 years ago and working without authorization are not proper bases to find that he is a flight risk.  (Petition ¶ 70; Application 7–10.)

To support this proposition, Petitioner cites Lemus Crispin v. Bondi, --- F.Supp.3d ----, ----, 2026 WL 768859, at *6 (E.D. Va. March 18, 2026)), where the court found that an immigration judge's reliance on the petitioner's unlawful status and work without authorization did not pass constitutional muster.  The court in Lemus Crispin explained that "a noncitizen's unlawful status cannot provide a legitimate consideration upon which an immigration judge may deny a request for release on bond under Section 1226(a) given that every individual who appears before an immigration judge for custody redetermination lacks lawful status."  2026 WL 768859, at *5.  The logic being that "an individual's bond hearing fails to comport with due process where an immigration judge relies on considerations that would lead to an automatic denial of bond in all cases."  Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).  BIA precedents from as early as 1976 confirm this conclusion.  In Matter of Patel, the BIA considered whether an immigration judge erred in releasing a noncitizen on a bond of $500 rather than releasing him on his own recognizance.  15 I. & N. Dec. 666, 666–67.  In setting a bond of $500, the immigration judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification."  Id. at 667.  However, the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding."  Id.  According to the BIA, "[s]uch a broad interpretation of

what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id.  Therefore, the BIA released the noncitizen on his own recognizance, recognizing that he had never been arrested or convicted of a crime, was living with his wife and child, who was a U.S. citizen, and had been working for the same employer for two years.  Id.  The BIA continues to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody."  In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).  As stated, the immigration judge here dedicates most of its reasoning in finding Petitioner a flight risk to his "lengthy immigration history" and cites Matter of C-M-M, 29 I. & N. Dec. 141 (BIA 2025) to support the finding.  (Petition, Ex. 1 at 1.)  However, in addition to being removed four times since 2001, the noncitizen in Matter of C-M-M also had "a lengthy criminal history in this country," including engaging in violent behavior and shoplifting.  29 I. & N. Dec. at 142.  The noncitizen also had "two illegal reentry convictions and has twice lied to Immigration Officers, alleging she is a United States citizen[,]" and was limited in her eligibility for relief from removal.  Id. at 143.  The Court is hard-pressed to see how the "factors unique to" the noncitizen in Matter of C-M-M remotely resemble Petitioner's circumstances.  Here, Petitioner has: voluntarily returned to Mexico when found, no criminal record, not evaded or lied to immigration authorities, a stable employment history, four U.S. children, a fixed address with his family, resided in Oxnard, California for 26 years, and is eligible for relief.  (See Petition at 17.)  But according to the immigration judge's reasoning, it appears that no matter what Petitioner presented, and no matter how many factors were presented in his favor, his immigration history was sufficient to deny bond—which, as discussed, does not comport with BIA precedent.

Second, the immigration judge emphasized in three sentences that Petitioner has been working in the United States without authorization, supporting a flight risk finding.  (Petition, Ex. 1 at 1.)  However, for similar reasons discussed regarding Petitioner's immigration history, "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place."  Mendez Trisueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026).  Again, by the immigration judge's reasoning, a noncitizen's unauthorized employment would essentially convert discretionary detention under Section 1226(a) to a de facto mandatory Section 1225 detention.  See Villa v. Mullin, No. 5:26-CV-01690-JDE, 2026 WL 1583941, at *2 (C.D. Cal. June 2, 2026) (quoting Lemus Crispin, 2026 WL 768859, at *6; see also Chavarria Mejia v. Crawford, 2026 WL 819603, at *5 (E.D. Va. Mar. 25, 2026).  As explained in Lemus Crispin and adopted in Villa, the Court agrees that "no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not" and, to the contrary, "steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed."  Villa, 2026 WL 1583941, at *2 (quoting Lemus Crispin, 2026 WL 768859, at *6).  This point is further underscored by the fact that Petitioner submitted three letters of support from his coworkers.  (See Petition, Ex. 8.)  The immigration judge did not explain how Petitioner's unlawful entry 26 years ago, or how working without authorization, bears on whether he will appear at future immigration proceedings.  See Matter of Patel, 15 I &N at 667 ("These

factors bear little if any relevance to the issue of whether or not the respondent is likely to appear for his deportation proceeding."). Moreover, Respondents have not substantively addressed Petitioner's contentions. (See Opp'n at 4.)

Third, the Court is also concerned by the immigration judge's reliance on Petitioner's perceived likelihood of obtaining relief from removal. (See Petition, Ex. 1.) Specifically, the immigration judge stated that Petitioner qualifies "for cancellation of removal given his four citizen daughters, but it's unknown whether any has a hardship, much less an exceptional and extremely unusual hardship, that would allow him to meet the rather substantial burden necessary for such relief." (Petition, Ex. 1 at 2.) The immigration judge then concludes that "the extremely speculative relief presents another flight risk factor." (Id.) An immigration judge "may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond," because a noncitizen who likely faces inevitable removal may not be inclined to appear at future removal hearings. Matter of R-A-V-P-, 27 I. & N. Dec. 803, 805 (BIA 2020). Given that the immigration judge's conclusions are purported to be based on facts supported by evidence, the Court finds it necessary to highlight that Petitioner has two daughters and two sons, as demonstrated by the birth certificates and letters of support submitted. (Petition, Exs. 5, 8.) Although an immigration judge may consider the likelihood of receiving relief based on specific facts presented in a particular case, the judge here did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case. (See Petition, Ex. 1 at 2.) This may be because Petitioner is "admittedly at the initial stage of his removal action" (Id.) and at the time of the hearing Petitioner "had yet to have his initial master calendar hearing where he would enter pleadings and inform the Court of his applications for relief (Petition ¶ 71). Thus, it appears that the immigration judge's conclusion was pure conjecture, as there was no evidence regarding the strengths and weaknesses of Petitioner's applications for relief because he had not yet submitted them. Petitioner's first hearing was held on July 9, 2026, but the court reset the matter of his initial master calendar hearing to allow him to file his relief applications. (Petition ¶ 71.) Further, the immigration judge provided no rationale as to why Petitioner would then be more likely to flee rather than appear in immigration court to pursue his claims for relief from removal proceedings.

Lastly, the immigration judge also appears to have incorrectly stated the earned income of Petitioner's proposed sponsor, Rosa. (Petition, Ex. 1 at 2.) The immigration judge stated that Petitioner's "sponsor daughter only earns an income of approximately $33,000 per year . . . . [which] is insubstantial within the realm that she would need to support herself and [Petitioner.]" (Id.) The immigration judge then concludes that "[t]his relatively insubstantial income also means she would be unable to pay a substantial bond that would be necessary even if this Court were to attempt to fashion a bond to mitigate the flight risk." (Id.) Contrary to the immigration judge's order, Petitioner contends that Rosa earns $36,700 (see Petition, ¶ 72, Ex. 6). Further, the immigration judge fails to cite any authority for the proposition that her income is insufficient. The lack of authority for this finding is odd given that "several provisions of the [INA] and the regulations contain instructions for calculating the sponsor's income and

household size for purposes of determining whether the sponsor has the means to support the intending immigrant, see 11 U.S.C. § 1183a(f)(6)(A)(iii); 8 C.F.R. § 213a.1 (defining 'household income,' 'household size,' and 'income')[.]" Erler v. Erler, 824 F.3d 1173, 1177 (9th Cir. 2016). Moreover, Petitioner argues that based on the HHS Poverty Guidelines for Affidavit of Support (see Petition, Ex. 7), Rosa makes above the threshold to qualify as a sponsor (Petition ¶ 72).

Thus, the Court concludes that the immigration judge abused its discretion in concluding that Petitioner's immigration history and lack of work authorization constitute "clear and convincing" evidence that he is an unmanageable risk of flight. The Court also finds that the immigration judge abused its discretion by making findings regarding Petitioner's applications for relief and sponsor income that were not based on evidence in the record. Therefore, the Court finds that Petitioner has demonstrated a likelihood of success on the merits.

### 2. Irreparable Harm

Petitioner is suffering irreparable harm because he is likely being detained in violation of his constitutional and statutory rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." Hernandez, 872 F.3d at 995. Therefore, Petitioner faces irreparable harm.

### 3. Balance of Equities and Public Interest

Where the government is the opposing party, the balancing of the equities and the public interest merge. See Nken v. Holder, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is, and will continue to be, subjected to prolonged detention and the resulting emotional harm.

Due to the minimal harm suffered by the government, the Court will not require security.

### C. Remedy

---

**CIVIL MINUTES—GENERAL**

The Court now turns to the appropriate remedy for the immigration judge's erroneous bond determination. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." Lujan v. Garcia, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." Id. (quoting Hilton v. Braunskill, 481 U.S. 770, 775 (1987)). "Upon determining that an [immigration judge] provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." Perez Velasquez v. Bondi, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases).

Other courts in this district have previously found "a new bond hearing is the appropriate remedy to allow the Immigration Court to correct its errors and conduct a bond hearing that complies with governing law." N.A. v. Warden, Adelanto Det. Facility, No. 5:25-cv-03007-cv-MBK, 2026 WL 734587, at *9 (C.D. Cal. Feb. 20, 2026), adopted, No. 5:25-cv-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026). However, here, the Court believes it appropriate to order Petitioner's release. As discussed, this is the second time Petitioner has come to federal court to vindicate his rights. Additionally, and because the Court has found that the evidence presented does not establish that he is a flight risk, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." Soriano v. Hernandez, No. 2:26-cv-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026).

## IV.  CONCLUSION

For the reasons described above, the Court **GRANTS** Petitioner's Application. Accordingly, Respondents are **ORDERED** to immediately release Petitioner Severo Gonzalez Reyes (A# 246 061 578) from custody, subject only to narrowly tailored conditions of release no more restrictive than necessary to ensure his appearance as required and to protect the community, if any. Additionally, Respondents shall file a status report no later than five (5) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this Order.

Lastly, given the sensitive nature of the exhibits filed in support of the Petition (Dkt. No. 1), the Court **DIRECTS** the Clerk of Court to **SEAL** the entry.

**IT IS SO ORDERED.**